And our last case for oral argument this morning is Appeal No. 23-3249, Wolff v. Virgil. Good morning, Your Honor. Just one moment, please. We'll let counsel get situated over there. Oh, I'm so sorry. This hip's menacing. Take your time. I was afraid my time might be going. Oh, no, it's not going yet. We'll wait. Okay, Mr. Olson, whenever you're ready. Good morning, Your Honors. My name is Attorney Eric Olson of Eminent Domain Services, LLC. With me here today in court are Ron and Carrie Wolff. May it please the court, this is a case where Ron Wolff did something that a lot of us are told in grade school that we can do. That if you don't like the way something is going, you can run for office and try to change it. Well, he ran for office to try to make a change, and less than a year after, he found his house and his business being raided by a large group of officers. And it turned out that the basis for that raid was the reports to law enforcement by his political adversaries. It has been clearly established law for 99 years since the Supreme Court wrote in Maroon v. that in order to be constitutional, a warrant, quote, On page 12 of our brief, we showed two of the executing officers admitting under oath at a deposition that there was discretion for the individual executing officers to decide what to seize and what not to seize. Special Agent Anderson said that, and Special Agent Windorf testified the same way. I'm going to stop you, Mr. Olson, because you have so little time. I want to say that I couldn't agree more. That warrant was breathtakingly broad. Okay. But I think we need to zero in on qualified immunity, if you would. You see, in the Grow case that you rely on, it's analogous. In the portion of the warrant form that called for a description of the person or property to be seized, Petitioner typed a description of the respondent's two-story blue house rather than the allegedly illegal firearms. Here we do have a list of items. Would you consider that a significant difference? Your Honor, thank you for the great question. If all the protection that we have, if all that's left of the Fourth Amendment is growth, then we are in a very sad situation in this country. This warrant was flawed on so many grounds. It violated Bishop, which said that if there's better language, more specific language, you have to use it. It violated this case's – Stefanik, which cited to the United States Supreme Court case George, which said that if a warrant cites only to a broad criminal statute, that is not enough, and that is all that this warrant did. It cited to – it violated the probable cause requirement, which actually, interestingly, the defendants even state in their own brief. They say the Fourth Amendment states that a warrant is valid only when based upon probable cause supported by author affirmation. This warrant authorized under Item 9 for law enforcement to seize all of the Wolf's computers and cell phones and go through everything and look for contraband, whatever that means. And if we go through Agent Yerges' warrant, there is not a single mention of contraband, and the statute itself isn't even a contraband statute. It's an amorphous sort of an honest services provision about misconduct in public office that Mr. Wolf had been in that public office for a full five months when his political rivals reported him to law enforcement. MS. MCCARTHY. Mr. Olson, on the qualified immunity question, what is your strongest case as to the clearly established element?  Well, I think – MS. MCCARTHY. And if you would address that as to both claims, the execution of the search warrant and the supervision of the search warrant.  The warrant, the execution, and the supervision. So the warrant itself says – violates Bishop, it violates Vitek, it violates Stefanik, it violates Marone, it violates everything. The execution, Special Agent Yerges, who was the only one who had any knowledge of what was actually in the affidavit, he was not there for the execution. He was questioning Ron. In what case are you relying on for clearly establishing – Well, Stefanik, for example. Because Stefanik says – if we look at Stefanik, Stefanik says that – and I believe this is at 1034 – Stefanik says that the warrant would have been clearly unconstitutional, except that it was saved by the fact that the searchers were aware of what was in the affidavit. And Stefanik states that they were – that nothing would have occurred any differently. Okay, so here I have Stefanik at 1034. Basically, Stefanik says that the warrant was so deficient that the officers were on clear notice – they were on fair notice because it was clearly established law that the Stefanik warrant would not have been constitutional, absent the information in the affidavit. So, reading the inverse of Stefanik, it makes it clearly established. Archer, for that matter. Archer was only saved by the fact that it narrowed in on two specific transactions. The Roos Plaza lease and the 2009 housekeeping. Is there any suggestion, though, that the officers rely on – or any attack that they relied on the warrant in good faith? Because, I mean, of course in comparison to the affidavit that was submitted. Okay, so they – I'm directing, I'm sorry, toward Archer, the case you just raised. Sure. And I think that we can – we've established in this case that they didn't know what was in the warrant. And I would like to reserve three minutes, if at all possible. It can't be good faith. You mean the agents didn't know what was in the warrant? The only agents who knew what was in the affidavit was Special Agent Yerges, who was not involved in the supervision of the search. The affidavit or the warrant? Did I say the – You did. The affidavit. The only one who knew what was in the affidavit was Yerges. The other searchers were shown what was in the warrant, even though he didn't have enough copies for everybody, but they did not know what was in the affidavit. And then Yerges was off questioning Mr. Wolfe, so he wasn't supervising, and the agents testified flat out that they had discretion on what to seize. They have to know Marone, which is that that's verboten, so they were essentially admitting that they knew that this was an unlawful warrant. And you – it's your argument that agents who are executing a search warrant have to have read the affidavit in support? No. If the warrant was specific enough, then they wouldn't have had to have. If the warrant had been drafted in a way that was constitutional, all they needed to be given was the warrant. And in fact, if they had been supervised and advised of exactly what they needed to find and what they couldn't find, they may not have even have to have been shown the warrant. But as it happened, the agents didn't know what to look for. They thought they had discretion. They were directed only to a very broad statute, which, in fact, we cite in our brief. During deposition, I asked one of the officers, what exactly was it that you were searching for? And he said, well, public integrity. That could have been anything. You are into your rebuttal time if you want to save some.  Ms. Hipsman? Good morning. Good morning. Faye Hipsman on behalf of Special Agent Jay Yerges. May it please the court. The district court correctly began and ended with the second prong of the qualified immunity analysis. There is no clearly established law stating that the warrant issued in this case was not sufficiently particular or that Special Agent Yerges' supervision of the search violated the Fourth Amendment. Ms. Hipsman, would we even be here today if the warrant had said documents related to unlawful candidacy, false swearing, and walking quorums? Because without those qualifications, this warrant really looks like a fishing expedition. Well, that would be a question for the Wolffs, but the... Yes, but I'm asking you. The crime of public misconduct in office that was cited in the warrant was one subsection of Wisconsin's five-part statute addressing misconduct in public office. And what this crime is really directed at is use of public office outside of the duties of that office to gain an unfair advantage. And all of the crimes... If we look at what was seized, I think this is where... So the warrant says any documents in whatever format tending to evidence the possible misconduct in office and other items which may constitute evidence of crimes related to misconduct. What could you not seize? So there are a number of things that couldn't be seized. The particular conduct that Special Agent Yerges was targeting here was false residency claims, issues with contracts, public contracts... It's not limited to that. I'm asking, based on the language in the warrant, what could you not seize? So you could not seize, for example, and this was not seized, documents that were communications that Mr. Wolff was having with his friends or personal photographs. The reason why... I understand that the warrant listed a broad range of documents, but this is because the particular conduct that Special Agent Yerges was targeting... I know as soon as you say personal photographs and you're looking for misconduct for public office where everybody's minds goes. Well, we've seen a lot of photographs, personal photographs recently of some files that goes to potentially misconduct in public office. And so it was more rhetorical of how was this warrant not a phishing or gave licenses to do that? Because they did, the agents did, using the warrant, seize a large amount of information. That was even before Mr. Wolff was in public office. Right. So I understand the concerns with the breadth of documents. And the reason why there were so many listed in there is because the nature of the conduct that Special Agent Yerges was investigating were things that would appear in someone's... across a range of professional documents. His personal email, there were concerns that he was communicating improperly with other board supervisors and using his personal email to do so. And so Seventh Circuit case law in situations similar to this authorizes searches for documents that... Look at the Bishop case, for example. A warrant authorizing a search for documents that will prove a crime may authorize a search of every document the suspect has because any of them might supply evidence or in Vitek supply. Specificity is difficult when evidence of the crimes can be found in almost every type of business document conceivable. And in the case here, the concern was about misconduct in public office of various types. What about the contraband that's listed there? Where does that come from? What's the basis for that? I didn't see anything in the affidavit that suggested that the Wolfs were possessing, selling, using contraband. I suppose that if there was contraband that was evidence of misconduct in public office, that could be... Do you see where it particularly is getting thinner and thinner? If we can leave it up to the agents to go in there and just determine on site? Well, I would also like to frame... So this is a 1983 case. So was there anything to suggest that there was contraband at play? Or maybe you're defining that term differently. If Special Agent Yerges was investigating a variety of crimes that amounted to and he felt that the best fit was misconduct in public office, and if there was contraband that fit into that category, that is why the warrant comes in. But there's nothing in the affidavit that suggests you might find that. That's what concerns me. Certainly, given the broad definition and the way the affidavit is written, the documents, the computers, you have a stronger argument there, but I didn't see anything that would support contraband. I understand. I think bringing this back to qualified immunity and having clearly established law that the warrant was... Before you bring it back, forgive me, but Yerges admitted in a deposition that the officers were told to use their discretion in deciding what to seize. Isn't that per se evidence of an illegal seizure? Are officers allowed to use their discretion? Well, Special Agent Yerges held an hour-long preoperational meeting before the search and also testified in his deposition that he told officers exactly what they were looking for. All of the information that was in the affidavit, the specific conduct that he was concerned about, that is in his deposition. Like the daughter's divorce papers, things like that? If a document like that would show evidence of where the Wolfs actually lived, then that would be covered by the warrant. Are officers permitted to use their discretion when executing a search warrant under the Fourth Amendment? No, they have to follow the warrant and the instructions that they are given. And Mr. Yerges... So are you able to tie the divorce papers to anything articulated in the affidavit supporting the issuance of the search warrant? It is possible that the divorce papers... Is it possible? It's also possible that I could become 6-1. Highly unlikely. The question directing you back, is there anything that's tying the affidavit to the notion of when you go into their personal residence, when you go into a business to take divorce papers... When there is a group of documents that has information that you are looking for and there is, for example, a one-off divorce paper... Is there any allegations that he was using a lawyer to defraud or to misuse his office? Using a lawyer? Yes. Was there anything suggesting the need to take divorce papers? Not in particular. So why would we not be back where we started this conversation as to the officers were encouraged to use their discretion? It is possible that the divorce papers were in a collection of documents that had a whole other range of relevant documents. We're not talking about possibilities when we're executing a warrant, right? If they're holding... or the direction under the Fourth Amendment is that we want officers executing search warrants to follow the warrant. Right. This case is not about their conduct. This case is focused on Special Agent Jay Yerges and he instructed his officers not to use discretion and he described what was on and off limits. So in a 1983 case for damages, it's not a suppression motion. This is... I'm well aware procedurally where we are. I know what world we're in. But we were asking the question more generally when looking at a warrant because under qualified immunity, we're looking for a clearly established right. Right. And so we're trying to either side to lay the framework of this clearly established right of what could the officers do or not do before we even turn to Yerges' behavior or conduct in this particular instance. And so I haven't been able to get an answer from either side. I'm not aware of any clearly established law that makes it a Fourth Amendment violation to inadvertently gather a document that is not needed for an investigation and that that would lead to liability under the Fourth Amendment in this type of case. In my remaining time, I would also just urge the court to look at the statutes that are mentioned for their breadth and compare the statute in this case which is more narrow. And if the court has no further questions, we would ask the court to affirm the district court. Thank you, Ms. Hipsman. Mr. Olson. So a couple of things, Your Honors. First of all, unlike some of the other cases where warrants have been upheld, this warrant had no date limitation on it. There was an illusory date limitation because it said anything possessed after April 6th. And we can see from the list of items seized that many things that were created before April 6th, including old dental records and things of the nature, were seized. On page 39 of our brief, we wrote that Yerges first, interestingly at his deposition, first he said that he told the officers to stick to the time frame, that it was a very strict time frame. Anything outside of the time frame, I explicitly said we were not interested and was not relevant to the warrant. That was at page 10 of his deposition. Then he backed off suddenly because he realized that that couldn't possibly be true, and he said, oh, it included things related to the campaign. And if you look at the warrant return, how could misconduct in public office include all of Mr. Wolfe's campaign documents? When we look at Archer, Archer says that in order to be valid, a search warrant has to meet three tests. And I'll just talk about the second one and the third one. It says establish probable cause that the evidence sought in the warrant will aid in obtaining a conviction of a particular offense. The warrant did not say what particular offenses any of the evidence would aid in the conviction of, so the officers were just left to do a fishing expedition. And then it says there has to be particularity as to the things seized. I'm running out of time, so I just want to close with one thing. In 1927, about 99 years ago, Justice Butler of the United States Supreme Court, at page 195 and 196, essentially said the Fourth Amendment is to put the courts of the United States and the federal officials in the exercise of their power and authority under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects against all unreasonable searches and seizures under the guise of law. If we have come to a spot in this country that every officer who works for the DCI could not immediately identify this as an unlawful warrant that's abhorrent to everything that this country stands for, we are at a sad place. Thank you for your time. Thank you, Mr. Olson. Thanks to both counsel. The court will take the case under advisement. And that concludes our oral arguments for this morning.